**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| VirnetX Inc. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No. 6:13-cv-211 (LED) |
| | § | |
| Apple Inc., | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT APPLE INC.'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

Defendant Apple Inc. ("Apple") files this Original Answer, Affirmative Defenses and Counterclaims to Plaintiff's Third Amended Complaint for Patent Infringement (the "Complaint") filed by VirnetX Inc. ("VirnetX") and Science Applications International Corporation ("SAIC").

## I.      ANSWER

## THE PARTIES

1. - 3.   Apple is without sufficient information or knowledge to either admit or deny the allegations in paragraphs 1 - 3 and therefore denies the same.

4.      Apple admits that it is a California corporation organized and existing under the laws of California, with its principal place of business at One Infinite Loop, Cupertino, California 95014.  Apple admits that it has conducted business in this district.  Apple denies all other allegations contained in paragraph 4 of the Complaint.

5. - 6.   Apple is without sufficient information or knowledge to either admit or deny the allegations in paragraphs 5 and 6 and therefore denies the same.

## JURISDICTION AND VENUE

7.     Apple admits that VirnetX alleges a civil action for patent infringement under the laws of the United States, Title 35 United States Code §§ 101, *et seq*.  Apple admits that this Court has subject matter jurisdiction over VirnetX's claims for patent infringement.  Apple denies all other allegations contained in paragraph 7 of the Complaint.

8.     To the extent the allegations in paragraph 8 relate to Apple, Apple admits that venue is proper in this Court, but Apple denies that this judicial district is the most convenient forum for this case.  Apple denies all other allegations in this paragraph to the extent such allegations relate to Apple.  To the extent the allegations in paragraph 8 relate to the other Defendants in this case, Apple is without sufficient information or knowledge to either admit or deny the allegations and therefore denies the same.

9.      To the extent the allegations in paragraph 9 relate to Apple, Apple admits that this Court has personal jurisdiction over Apple.  Apple admits that it has conducted business in the State of Texas.  Apple admits that it has and does sell products and provide services to persons within the State of Texas and this District, but it denies that it has committed any acts of infringement within this District or the State of Texas, and specifically denies any wrongdoing, infringement, inducement of infringement, or contribution to infringement.  Apple denies all other allegations in this paragraph to the extent such allegations relate to Apple.  To the extent the allegations in paragraph 9 relate to the other Defendants in this case, Apple is without sufficient information or knowledge to either admit or deny the allegations and therefore denies the same.

## ASSERTED PATENTS

10.     Apple admits that, according to the face of the patent, United States Patent No. 6,502,135 ("the '135 patent") is entitled "Agile Network Protocol for Secure Communications with Assured System Availability" and reflects an issue date of December 31, 2002.  Apple admits that Edmund Colby Munger, Douglas Charles Schmidt, Robert Dunham Short, III, Victor Larson, and Michael Williamson are listed as inventors on the face of the patent.  Apple admits that what appears to be a copy of the '135 patent is attached as Exhibit A to the Complaint. Apple denies all other allegations contained in paragraph 10 of the Complaint.

11.     Apple admits that, according to the face of the patent, United States Patent No. 6,839,759 ("the '759 patent") is entitled "Method for Establishing Secure Communication Link Between Computers of Virtual Private Network Without User Entering Any Cryptographic Information" and reflects an issue date of January 4, 2005.  Apple admits that Victor Larson, Robert Dunham Short, III, Edmund Colby Munger, and Michael Williamson are listed as inventors on the face of the patent.  Apple admits that what appears to be a copy of the '759 patent is attached as Exhibit B to the Complaint.  Apple denies all other allegations contained in paragraph 11 of the Complaint.

12. Apple admits that, according to the face of the patent, United States Patent No. 7,188,180 ("the '180 patent") is entitled "Method for Establishing Secure Communication Link Between Computers of Virtual Private Network" and reflects an issue date of March 6, 2007. Apple admits that Victor Larson, Robert Dunham Short, III, Edmund Colby Munger, and Michael Williamson are listed as inventors on the face of the patent.  Apple admits that what appears to be a copy of the '180 patent is attached as Exhibit C to the Complaint.  Apple denies all other allegations contained in paragraph 12 of the Complaint.

13.     Apple admits that, according to the face of the patent, United States Patent No. 7,418,504 ("the '504 patent") is entitled "Agile Network Protocol for Secure Communications Using Secure Domain Names" and reflects an issue date of August 26, 2008.  Apple admits that Victor Larson, Robert Dunham Short, III, Edmund Colby Munger, and Michael Williamson are listed as inventors on the face of the patent.  Apple admits that what appears to be a copy of the '504 patent is attached as Exhibit D to the Complaint.  Apple denies all other allegations contained in paragraph 13 of the Complaint.

14.     Apple admits that, according to the face of the patent, United States Patent No. 7,490,151 ("the '151 patent") is entitled "Establishment of a Secure Communication Link Based on a Domain Name Service (DNS) Request" and reflects an issue date of February 10, 2009.  Apple admits that Edmund Colby Munger, Robert Dunham Short, III, Victor Larson, and Michael Williamson are listed as inventors on the face of the patent.  Apple admits that what appears to be a copy of the '151 patent is attached as Exhibit E to the Complaint.  Apple denies all other allegations contained in paragraph 14 of the Complaint.

15.     Apple admits that, according to the face of the patent, United States Patent No. 7,921,211 ("the '211 patent") is entitled "Agile Network Protocol for Secure Communications Using Secure Domain Names" and reflects an issue date of April 5, 2011.  Apple admits that Edmund Colby Munger, Robert Dunham Short, III, Victor Larson, and Michael Williamson are listed as inventors on the face of the patent.  Apple admits that what appears to be a copy of the '211 patent is attached as Exhibit F to the Complaint.  Apple denies all other allegations contained in paragraph 15 of the Complaint.

## **COUNT ONE**

## **ALLEGED PATENT INFRINGEMENT BY AASTRA**

4

16.      Apple incorporates by reference paragraphs 1-15 above as if fully set forth herein. Apple is without sufficient information or knowledge to either admit or deny the allegations in paragraph 16 regarding Aastra and the '135, '504, and '211 patents and therefore denies the same.

16. – 36.  Apple is without sufficient information or knowledge to either admit or deny the allegations in paragraphs 16-36 and therefore denies the same.

## COUNT TWO

## ALLEGED PATENT INFRINGEMENT BY APPLE

37.      Apple incorporates by reference paragraphs 1-36 above as if fully set forth herein. Apple denies that it has infringed or continues to infringe the '135, '151, '504, or '211 patents.

38.      Denied.

39.      Denied.

40.      Apple admits that it provides or has provided the iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPod touch, iPad, and iPad 2 to others in the United States.  Apple denies that these or any other Apple products infringe any asserted claims of the '135 patent.  Apple further denies all other allegations contained in paragraph 40 of the Complaint.

41.      Denied.

42.      Denied.

43.      Apple admits that it makes or has made, uses or used, sells or sold, offers for sale or offered for sale, imports or imported, exports or exported, supplies or supplied, and/or distributes or distributed within and from the United States the iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPod touch, iPad and iPad 2, but it denies that these or any other Apple products

infringe any asserted claims of the '151 patent.  Apple further denies all other allegations contained in paragraph 43 of the Complaint.

44.    Apple admits that it makes or has made, uses or used, sells or sold, offers for sale or offered for sale, imports or imported, exports or exported, supplies or supplied, and/or distributes or distributed within and from the United States the iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPod touch, iPad, and iPad 2, but it denies that these or any other Apple products infringe any asserted claims of the '151 patent.  It is not clear what is referenced by "Apple's servers, master discs, and other media that store, cache, or distribute iPhone OS."  As such, Apple denies allegations in paragraph 44 regarding the foregoing statement.  Apple further denies all other allegations contained in paragraph 44 of the Complaint.

45.    Apple admits that it provides or has provided the iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPod touch, iPad, and iPad 2 to others in the United States.  Apple denies that these or any other Apple products infringe any asserted claims of the '151 patent.  It is not clear what is referenced by "media that store, cache, or distribute iPhone OS."  As such, Apple denies allegations in paragraph 45 regarding the foregoing statement.  Apple further denies all other allegations contained in paragraph 45 of the Complaint.

46.    Denied.

47.    Denied.

48.    Denied.

49.    Apple admits that it makes or has made, uses or used, sells or sold, offers for sale or offered for sale, imports or imported, exports or exported, supplies or supplied, and/or distributes or distributed within and from the United States the iPhone 4, iPod touch, iPad 2, and Apple computers, but it denies that these or any other Apple products infringe any asserted

claims of the '504 patent.  It is not clear what is referenced by "Apple's servers, master discs, and other media that store, cache, or distribute iPhone OS."  As such, Apple denies the same. Apple further denies all other allegations contained in paragraph 49 of the Complaint.

50.    Denied.

51.    Apple admits that it provides or has provided the iPhone 4, iPod touch, iPad 2, and Apple computers to others in the United States.  Apple denies that these or any other Apple products infringe any asserted claims of the '504 patent.  Apple further denies all other allegations contained in paragraph 51 of the Complaint.

52.    Denied.

53.    Denied.

54.    Denied.

55.    Apple admits that it makes or has made, uses or used, sells or sold, offers for sale or offered for sale, imports or imported, exports or exported, supplies or supplied, and/or distributes or distributed within and from the United States the iPhone 4, iPod touch, iPad 2, and Apple computers, but it denies that these or any other Apple products infringe any asserted claims of the '151 patent.  It is not clear what is referenced by "Apple's servers, master discs, and other media that store, cache, or distribute iPhone OS."  As such, Apple denies allegations in paragraph 55 regarding the foregoing statement.  Apple further denies all other allegations contained in paragraph 55 of the Complaint.

56.    Denied.

57.    Apple admits that it provides or has provided the iPhone 4, iPod touch, iPad 2, and Apple computers to others in the United States.  Apple denies that these or any other Apple products infringe any asserted claims of the '211 patent.  It is not clear what is referenced by

"media that store, cache, or distribute iPhone OS."   As such, Apple denies allegations in paragraph 57 regarding the foregoing statement.   Apple further denies all other allegations contained in paragraph 57 of the Complaint.

58.    Denied.

59.    Denied.

60.    Denied.

61.    Denied.

62.    Apple admits that it received notice of infringement after the filing of this lawsuit but denies that any Apple products infringe the '135 ,'151, '504, or '211 patents.   Apple further denies all other allegations contained in paragraph 62 of the Complaint.

## COUNT THREE

## ALLEGED PATENT INFRINGEMENT BY CISCO

63.    Apple incorporates by reference paragraphs 1-62 above as if fully set forth herein. Apple is without sufficient information or knowledge to either admit or deny the allegations in paragraph 63 regarding Cisco and the '135, '759, '180, '504, '211, and '151 patents and therefore denies the same.

64. – 100.  Apple is without sufficient information or knowledge to either admit or deny the allegations in paragraphs 64 - 100 and therefore denies the same.

## COUNT THREE

## ALLEGED PATENT INFRINGEMENT BY NEC

101.    Apple incorporates by reference paragraphs 1 - 100 above as if fully set forth herein.   Apple is without sufficient information or knowledge to either admit or deny the

allegations in paragraph 101 regarding NEC and the '135, '504, and '211 patents and therefore denies the same.

102. - 121.  Apple is without sufficient information or knowledge to either admit or deny the allegations in paragraphs 102 - 121 and therefore denies the same.

## DEMAND FOR JURY TRIAL

Apple also demands a trial by jury.

## PRAYER FOR RELIEF

Apple opposes VirnetX's requested relief against Apple or any other relief VirnetX requests against Apple, including those specified in paragraphs 1-19 of this Section of the Complaint.

## DENIAL OF ANY REMAINING ALLEGATIONS

Except as specifically admitted herein, Apple denies any remaining allegations in the Complaint that are directed at Apple.

## II.    AFFIRMATIVE DEFENSES

Apple asserts the following Affirmative Defenses.

## FIRST AFFIRMATIVE DEFENSE
## (No Infringement)

122.    Apple does not infringe and has not infringed any valid and enforceable claim of the '135, '151, '504, and '211 patents.

## SECOND AFFIRMATIVE DEFENSE
## (Invalidity)

123.    Claims of the '135, '151, '504, and '211 patents are invalid for failure to satisfy the conditions for patentability set forth in Title 35 of the United States Code, including without limitation §§ 101, 102, 103 and 112.

### THIRD AFFIRMATIVE DEFENSE
### (Laches)

124.    VirnetX's claims are barred in whole or in part by laches.

### FOURTH AFFIRMATIVE DEFENSE
### (Waiver)

125.    VirnetX's claims are barred in whole or in part by waiver.

### FIFTH AFFIRMATIVE DEFENSE
### (Estoppel)

126.    VirnetX's claims are barred in whole or in part by estoppel.

### SIXTH AFFIRMATIVE DEFENSE
### (Notice, Damages, and Costs)

127.    VirnetX's claims for damages, if any, against Apple are statutorily limited by 35
U.S.C. § 286 and/or § 287.

128.    VirnetX is barred from recovering costs in connection with this action under 35
U.S.C. § 288.

### SEVENTH AFFIRMATIVE DEFENSE
### (Sales to Government)

129.    VirnetX's claims are limited by 28 U.S.C. § 1498.

### EIGHTH AFFIRMATIVE DEFENSE
### (Unclean Hands and Inequitable Conduct)

130.    As more fully outlined in Apple's Count III, specifically paragraphs 10-46 in
Apple's Counterclaims, which are hereby incorporated by reference, the claims of the '135, '151,
'504, and '211 patents are unenforceable due to inequitable conduct, infectious unenforceability,
and/or unclean hands committed by the inventors, their counsel, SAIC, VirnetX, and/or others
substantively involved in the prosecution of the '135, '151, '504, or '211 patents.

## RESERVATION OF AFFIRMATIVE DEFENSES

131.    Apple hereby reserves the right to supplement additional affirmative defenses as discovery proceeds in this case.

## III.    COUNTERCLAIMS

Apple asserts the following counterclaims against VirnetX and SAIC.

## PARTIES

1.    Counterclaim plaintiff is a California Corporation with its principal place of business at One Infinite Loop, Cupertino, California 95014.

2.    On information and belief based on the Complaint, Counterclaim Defendant VirnetX Inc. ("VirnetX") is a Delaware corporation, having a place of business located at 5615 Scotts Valley Drive, Suite 110, Scotts Valley, California.

3.    On information and belief based on the Complaint, Counterclaim Defendant Science Applications International Corporation ("SAIC") is a Delaware corporation, having a place of business located at 1710 SAIC Drive, McLean, Virginia 22102.

## JURISDICTION AND VENUE

4.    These counterclaims arise under the patent laws of the United States as enacted under Title 35 of the United States Code and the provisions of the Federal Declaratory Judgment Act.  The jurisdiction of this Court is proper under 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

5.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400.

## COUNT I – DECLARATION OF NON-INFRINGEMENT

6.    Based on VirnetX's filing of this action, Apple's Affirmative Defenses, SAIC's ownership interest in the patents asserted against Apple (see Dkt. No. 236), and the addition of SAIC as a party to this action, an actual controversy has arisen and now exists between (a)

11

VirnetX and SAIC and (b) Apple as to whether Apple has infringed or is infringing one or more claims of U.S. Patent Numbers 6,502,135 ("the '135 patent"), 7,490,151 ("the '151 patent"), 7,418,504 ("the '504 patent") and 7,921,211 ("the '211 patent").

7.      Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Apple requests the declaration of the Court that Apple does not infringe and has not infringed any valid and enforceable claim of the '135, '151, '504, and '211 patents.

## COUNT II – DECLARATION OF PATENT INVALIDITY

8.      Based on VirnetX's filing of this action, Apple's Affirmative Defenses, SAIC's ownership interest in the patents asserted against Apple (see Dkt. No. 236), and the addition of SAIC as a party to this action, an actual controversy has arisen and now exists between (a) VirnetX and SAIC and (b) Apple as to the validity of the claims of the '135, '151, '504, and '211 patents.

9.      Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Apple requests the declaration of the Court that the '135, '151, '504, and '211 patents are invalid.

## COUNT III – DECLARATION OF UNENFORCEABILITY

10.     Based on VirnetX's filing of this action, Apple's Affirmative Defenses, SAIC's ownership interest in the patents asserted against Apple (see Dkt. No. 236), and the addition of SAIC as a party to this action, an actual controversy has arisen and now exists between (a) VirnetX and SAIC and (b) Apple as to the enforceability of the '135, '151, '504, and '211 patents.

11.     The '135 patent, which issued on December 31, 2002, was filed with the United States Patent and Trademark Office ("Patent Office") on February 15, 2000 as U.S. Patent Application No. 09/504,783 ("the '783 application").

12.     The '151 patent, which issued on February 10, 2009, was filed with the Patent Office on September 30, 2002 as U.S. Patent Application No. 10/259,494 ("the '494 application").

13.     The '504 patent, which issued on August 26, 2008, was filed with the Patent Office on November 18, 2003 as U.S. Patent Application No. 10/714,849 ("the '849 application").

14.     The '211 patent, which issued on April 5, 2011, was filed with the Patent Office on August 17, 2007 as U.S. Patent Application No. 11/840,560 ("the '560 application").

15.     On information and belief, the applications that matured into the '135 and '151 patents were assigned to Science Application International Corporation ("SAIC").   On information and belief, SAIC assigned to VirnetX certain rights in the '135 patent after issuance and certain rights in the application that matured into the '151 patent.  On information and belief, the applications that matured into the '504 and '211 patents were assigned to VirnetX.

### A.  The '135 Patent

16.     The '135 patent is unenforceable due to inequitable conduct.  Based on a review of the file history and based on Apple's understanding of the allegations by VirnetX and SAIC, one or more of the people substantively involved in the prosecution of the application leading to the '135 patent, including a reexamination, were aware of information material to the patentability of the claims of the '135 patent, but withheld that information from the Patent Office with the intent to deceive.

17.     The withheld information includes U.S. Patent Application No. 09/399,753 ("the Miller Application"), which was pending during the prosecution of the '135 patent. The pendency of the Miller Application was information material to patentability of the '135 patent based on Apple's understanding of the allegations by VirnetX.  The withheld information also includes RFC 2401-Security Architecture for the Internet Protocol ("RFC 2401") and information concerning the publication date of the Aventail Administrator's Guide ("Aventail"), which are material to patentability based upon Apple's understanding of the allegations by VirnetX.  This withholding of information material to patentability with the intent to deceive the Patent Office constitutes inequitable conduct.

18.     The Miller Application, RFC 2401, and the Aventail reference are not cumulative to the prior art made of record during prosecution of the '135 patent.  On information and belief, there is a substantial likelihood that a reasonable examiner would have considered this art in determining whether to allow the '135 patent to issue.

19.     During the prosecution of the application leading to the '135 patent, one or more of the people substantively involved in its prosecution (including Ross Dannenburg) were aware of the Miller Application.  Mr. Dannenburg was involved in the prosecution of the Miller Application at least as early as June 14, 2002, when he signed an Amendment / Response in the prosecution history of the Miller Application.  Mr. Dannenburg was involved in the prosecution of the '135 patent at least as early as January 28, 2002, when he signed a Transmittal Form for an Amendment / Response in the prosecution file history of the '135 patent.  Therefore, Mr. Dannenburg was involved in the prosecution of the Miller Application while he was prosecuting the '135 patent.  Based on Apple's understanding of the allegations by VirnetX, the pendency of the Miller Application is information material to patentability.  Nonetheless, those substantively

involved in the prosecution of the application intentionally failed to disclose this material information to the Patent Office at any time during the prosecution of the '135 patent with intent to deceive.  Moreover, the materiality of the Miller Application leads to an inference of intent to deceive.   This withholding of information material to patentability with the intent to deceive the Patent Office constitutes inequitable conduct.

20.     During the prosecution of the application leading to the '135 patent, one or more of the people substantively involved in its prosecution were aware of RFC 2401, including Mr. Dannenburg, because it is mentioned in the specification of the '135 patent.  Based on Apple's understanding of the allegations by VirnetX, RFC 2401 is material prior art.  Nonetheless, those substantively involved in the prosecution of the application intentionally failed to submit this material prior art reference to the Patent Office as required by 37 C.F.R. 1.56 and 37 C.F.R. 1.97, with intent to deceive.   Moreover, in mentioning RFC 2401 in the application, those substantively involved in the prosecution of the application described RFC 2401 in a way that concealed its materiality, with intent to deceive.  Moreover, the materiality of RFC 2401 leads to an inference of intent to deceive.  This conduct, undertaken with the intent to deceive the Patent Office, constitutes inequitable conduct.

21.     On or about February 15, 2007, VirnetX filed a lawsuit against Microsoft Corporation ("Microsoft") in the Eastern District of Texas, Tyler Division, C.A. No. 6:07-CV-80 (the "Microsoft Case"), alleging that Microsoft infringed certain VirnetX patents, including the '135 patent.

22.     In December 2009, Microsoft filed a reexamination request with the Patent Office requesting reexamination of claims 1-10 and 12 of the '135 patent, citing, among other

references, the Aventail reference as prior art under 35 U.S.C. § 102(a).  Microsoft asserted that

the Aventail reference anticipated claims 1-10 and 12 of the '135 patent.

23.     On or about December 31, 2009, the Patent Office ordered reexamination of

claims 1-10 and 12 of the '135 patent, finding, in part, that the Aventail reference raised a

substantial new question of patentability of all of the requested claims of the '135 patent.

24.     On or about January 15, 2010, the Patent Office issued a non-final action rejecting

claims 1, 3, 4, 6-10, and 12 of the '135 patent as being anticipated by the Aventail reference.

25.     On or about February 22, 2010, VirnetX filed a petition to extend its deadline for

responding to the office action, pointing out, in part, that it needed additional time to investigate

whether the Aventail reference was proper prior art, including investigating the dates of

conception and reduction to practice of the inventions claimed in the '135 patent as well as

diligence there between.  The petition also cited as a basis for extension that the Microsoft Case

was causing a "significant drain" on VirnetX's resources.  Moreover, the petition stated that the

extension "would likely also permit consideration of any court conclusions regarding the claims

presently under reexamination."  The petition was filed by Toby Kusmer of McDermott Will &

Emery, the same firm that represented VirnetX in the Microsoft Case until 2009.  The Patent

Office responded on or about February 24, 2010, granting an extension, setting the deadline for

response as April 15, 2010.

26.     On or about March 8, 2010, trial of the Microsoft Case ("Microsoft Trial")

commenced.  During the Microsoft Trial, one or more witnesses for VirnetX, including inventor

Edward Munger, testified that the claims of the '135 patent were conceived no earlier than three

months after September 23, 1999, placing the date of conception for claims 1-10 and 12 on or

about December 23, 1999.  During the Microsoft Trial, Microsoft alleged, in part, that claims 1-

10 and 12 of the '135 patent were anticipated by the Aventail reference, which on information and belief bears a copyright date 1996 – 1999.  Microsoft presented evidence indicating that the Aventail reference may have been published as early as June 1999.  Based on a review of the trial record, VirnetX did not dispute the publication date of the Aventail reference.  The Microsoft Trial concluded on or about March 16, 2010.  Therefore, at least as of March 16, 2010, VirnetX was aware that the Aventail reference may have been published at least as early as June 1999, which is prior to the February 15, 2000, filing date of the application that matured into the '135 patent and prior to the earliest conception date of December 1999 claimed by the inventor of the '135 patent.

27.     On or about March 25, VirnetX gave notice to the Patent Office of the outcome of the case and submitted the jury verdict form from the case.  On or about March 29, 2010, VirnetX filed a petition requesting that the reexamination proceeding be suspended.  The Patent Office did not respond to the request until after the date set for VirnetX's response to the non-final office action rejection.

28.     On or about April 15, 2010, VirnetX responded to the office action rejection, in part, by asserting that the Aventail reference should not be considered prior art because no evidence had been submitted by Microsoft that established the actual publication date of the Aventail reference.  Moreover, VirnetX did not provide the result of any investigation it may have made with respect to the publication date of the Aventail reference or the dates of conception or reduction to practice of the '135 patent that it indicated it would make in its petition for an extension of time, nor did VirnetX provide any information that it learned from the Microsoft Trial that related to the publication date of the Aventail reference.  Based on a review of the prosecution history, VirnetX did not disclose that its conception date for the claims

of the '135 patent was no earlier than December 1999, nor did VirnetX disclose that the Aventail reference may have been published as early as June 1999, as it was made aware of during the Microsoft Trial.

29.     On June 16, 2010, the Patent Office issued an Action Closing Prosecution.  In the action, the examiner recites that he made an attempt to determine the publication date of the Aventail reference, but was unsuccessful.  Based on the lack of evidence of the publication date, the examiner withdrew all of the rejections that had been based on the Aventail reference.

30.     VirnetX and/or its representatives, agents, and attorneys who were substantively involved in the prosecution of the reexamination knew or should have known of the Microsoft trial and the evidence presented regarding the publication date of the Aventail reference.  For example, Mr. Kusmer specifically referenced the Microsoft Trial and the potential for additional material information to come to light during that trial when seeking an extension to respond to an office action, as set forth in paragraph 25 above.  VirnetX and/or its representatives, agents, and attorneys withheld this information with the intent to deceive, either willfully or with such gross negligence or recklessness as constituting an act of willfulness amounting to inequitable conduct. Moreover, the materiality of the Aventail publication and the aforementioned evidence presented at the Microsoft Trial leads to an inference of intent to deceive.  Among other things, the information withheld was material to the reexamination of the '135 patent, in violation of the duty of candor the representatives and/or the attorneys owed to the Patent Office.

## The '151 Patent

31.     The application that issued as the '151 patent was a divisional of the application that issued as the '135 patent.

32.    The '151 patent is unenforceable due to unclean hands and/or infectious unenforceability resulting from inequitable conduct committed during the prosecution of the '135 patent, including its reexamination, as set forth above in paragraphs 16-30.

33.    The '151 patent is also unenforceable due to inequitable conduct.  Based on Apple's understanding of the allegations by VirnetX and SAIC, one or more of the people substantively involved in the prosecution of the application leading to the '151 patent were aware of information material to the patentability of the claims of the '151 patent, but withheld that information from the Patent Office with the intent to deceive.

34.    The withheld information includes the Aventail reference and "Building a Microsoft VPN: A comprehensive collection of Microsoft resources," pages 1-216 ("the Microsoft VPN reference").  These references were material to patentability based upon Apple's understanding of the allegations by VirnetX.  This withholding of information material to patentability with the intent to deceive the Patent Office constitutes inequitable conduct.

35.    The Aventail and Microsoft VPN references are not cumulative to the prior art made of record during prosecution of the '151 patent.  On information and belief, there is a substantial likelihood that a reasonable examiner would have considered this art in determining whether to allow the '151 patent to issue.

36.    During the prosecution of the application leading to the '151 patent, one or more of the people substantively involved in its prosecution were aware of the Aventail reference, including Mr. Kusmer of the McDermott law firm.  Mr. Kusmer filed the application that led to the issuance of the '151 patent, which was filed on September 20, 2002.  The McDermott law firm was aware of the Aventail reference at least as early as February 13, 2008, when Microsoft disclosed the reference in its invalidity contentions.  The '151 patent did not issue until February

10, 2009.  Based on Apple's understanding of the allegations by VirnetX, the Aventail reference is material prior art.  Moreover, in the reexamination of the '135 patent, the Patent Office found a substantial new question of patentability based on the Aventail reference, and the claims of the '135 patent relate to the same subject matter as the claims of the '151 patent.  Nonetheless, those substantively involved in the prosecution of the application intentionally failed to disclose this material prior art reference to the Patent Office with intent to deceive.  Moreover, the materiality of the Aventail reference leads to an inference of intent to deceive.  This conduct, undertaken with the intent to deceive the Patent Office, constitutes inequitable conduct.

37.     During the prosecution of the application leading to the '151 patent, one or more of the people substantively involved in its prosecution, including Mr. Kusmer, were aware of the Microsoft VPN reference.  The McDermott law firm was aware of the Aventail reference at least as early as February 13, 2008, when Microsoft disclosed the reference in its invalidity contentions.  The '151 patent did not issue until February 10, 2009.  Based on Apple's understanding of the allegations by VirnetX, the Microsoft VPN reference is material prior art.  Moreover, in the reexamination of the '135 patent, the Patent Office found a substantial new question of patentability based on the Microsoft VPN reference, and the claims of the '135 patent relate to the same subject matter as the claims of the '151 patent.  Nonetheless, those substantively involved in the prosecution of the application intentionally failed to disclose this material prior art reference to the Patent Office with intent to deceive.  Moreover, the materiality of the Microsoft VPN reference leads to an inference of intent to deceive.  This conduct, undertaken with the intent to deceive the Patent Office, constitutes inequitable conduct.

### The '504 Patent

38.     The application that issued as the '504 patent was a continuation of U.S. patent application number 09/558,210, which in turn was a continuation in part of the application that issued as the '135 patent.

39.     The '504 patent is unenforceable due to unclean hands and/or infectious unenforceability resulting from inequitable conduct committed during the prosecution of the '135 patent, including its reexamination, as set forth above in paragraphs 16-30.

40.     The '504 patent is also unenforceable due to inequitable conduct.  Based on Apple's understanding of the allegations by VirnetX and SAIC, one or more of the people substantively involved in the prosecution of the application leading to the '504 patent were aware of information material to the patentability of the claims of the '504 patent, but withheld that information from the Patent Office with the intent to deceive.

41.     The withheld information includes the Aventail reference and  the Microsoft VPN reference.  These references were material to patentability based upon Apple's understanding of the allegations by VirnetX.  This withholding of information material to patentability with the intent to deceive the Patent Office constitutes inequitable conduct.

42.     The Aventail reference and Microsoft VPN reference are not cumulative to the prior art made of record during prosecution of the '504 patent.  On information and belief, there is a substantial likelihood that a reasonable examiner would have considered this art in determining whether to allow the '504 patent to issue.

43.     During the prosecution of the application leading to the '504 patent, one or more of the people substantively involved in its prosecution were aware of the Aventail reference, including Mr. Kusmer of the McDermott law firm.  Mr. Kusmer was substantively involved in the prosecution of the application that led to the issuance of the '504 patent.  The McDermott law

firm was aware of the Aventail reference at least as early as February 13, 2008, when Microsoft disclosed the reference in its invalidity contentions.  The '504 patent did not issue until August 26, 2008.  Based on Apple's understanding of the allegations by VirnetX, the Aventail reference is material prior art.  Moreover, in the reexamination of the '135 patent, the Patent Office found a substantial new question of patentability based on the Aventail reference, and the claims of the '135 patent relate to the same subject matter as the claims of the '504 patent.  Nonetheless, those substantively involved in the prosecution of the application intentionally failed to disclose this material prior art reference to the Patent Office with intent to deceive.  Moreover, the materiality of the Aventail reference leads to an inference of intent to deceive.  This conduct, undertaken with the intent to deceive the Patent Office, constitutes inequitable conduct.

44.     During the prosecution of the application leading to the '504 patent, one or more of the people substantively involved in its prosecution, including Mr. Kusmer, were aware of the Microsoft VPN reference.  The McDermott law firm was aware of the Aventail reference at least as early as February 13, 2008, when Microsoft disclosed the reference in its invalidity contentions.  The '504 patent did not issue until August 26, 2008.  Based on Apple's understanding of the allegations by VirnetX, the Microsoft VPN reference is material prior art. Moreover, in the reexamination of the '135 patent, the Patent Office found a substantial new question of patentability based on the Microsoft VPN reference, and the claims of the '135 patent relate to the same subject matter as the claims of the '504 patent.  Nonetheless, those substantively involved in the prosecution of the application intentionally failed to disclose this material prior art reference to the Patent Office with intent to deceive.  Moreover, the materiality of the Microsoft VPN reference leads to an inference of intent to deceive.  This conduct, undertaken with the intent to deceive the Patent Office, constitutes inequitable conduct.

**The '211 Patent**

45.     The application that issued as the '211 patent was a continuation of the application that issued as the '504 patent.

46.     The '211 patent is unenforceable due to unclean hands and/or infectious unenforceability resulting from inequitable conduct committed during the prosecution of the '135 patent, including its reexamination, and the '504 patent as set forth above in paragraphs 16-30 and 38-44.

**JURY DEMAND**

47.     Apple demands a trial by jury.

**EXCEPTIONAL CASE**

48.     To the extent this is an exceptional case under 35 U.S.C. 285, Apple is entitled to recover from VirnetX and/or SAIC for Apples' attorneys' fees and costs incurred in connection with this action.

**PRAYER FOR RELIEF**

Apple respectfully requests a judgment against VirnetX and SAIC as follows:

A.     A declaration that Apple does not infringe and has not infringed any valid and enforceable claim of the '135, '151, '504, and '211 patents;

B.     A declaration that the '135, '151, '504, and '211 patents are invalid;

C.     A declaration that the '135, '151, '504, and '211 patents are unenforceable;

D.     That VirnetX and SAIC take nothing by its Complaint against Apple;

E.     That the Court enter judgment against VirnetX and SAIC and in favor of Apple and that the Complaint be dismissed with prejudice;

F.  That the Court enter a judgment that this is an exceptional case under 35 U.S.C. § 285 and enter a judgment awarding Apple its costs and reasonable attorneys' fees; and

G.  That the Court grant Apple whatever further relief the Court may deem just and proper.

Respectfully submitted,

Date: March 19, 2013                    /s/ Danny L. Williams
                                        Danny L. Williams - LEAD ATTORNEY
                                        State Bar No. 21518050
                                        E-mail:  danny@wmalaw.com
                                        Ruben S. Bains
                                        Texas Bar No. 24001678
                                        E-mail:  rbains@wmalaw.com
                                        Drew Kim
                                        Texas Bar No. 24007482
                                        E-mail:  dkim@wmalaw.com
                                        Williams, Morgan & Amerson, P.C.
                                        10333 Richmond, Suite 1100
                                        Houston, Texas 77042
                                        Telephone:  (713) 934-7000
                                        Facsimile: (713) 934-7011

                                        **ATTORNEYS FOR APPLE INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following counsel of record who are deemed to have consented to electronic service are being served this 19th day of March, 2013, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by, electronic mail, facsimile transmission and/or first class mail on this same date.


Dated: <u>March 19, 2013</u>                    <u>/s/ Mark Dunglinson</u>
                                               Litigation Paralegal